**COMMONWEALTH of Kentucky, DEPARTMENT OF HIGHWAYS, Appellant,**

v.

**Charles S. RANKIN et al., Appellees.**

Court of Appeals of Kentucky.

Dec. 16, 1960.

Rehearing Denied June 23, 1961.

damages are excessive and that the circuit court erroneously entertained the Rankins' cross-appeal. The question presented in the latter contention has been decided adversely. Commonwealth v. Clarke, Ky., 340 S.W.2d 442.

Appellees' property consisted of about forty-eight acres of land located in a rural community in Boyd County midway between Catlettsburg and Louisa on the west side of State Highway No. 3. The Chesapeake & Ohio Railway tracks paralleled the highway on the opposite side.

The buildings consisted of a one-story concrete block store building, with basement and walk-in cooler, a one-story concrete block five-room residence, a concrete block garage building, with apartment above, a four-room frame dwelling, a dairy barn, and some outbuildings. It is not clear whether there was another tenant house on the back side of the farm. The two residences and garage building were located to the immediate rear of the store building. Appellees and other members of their family resided in these three buildings. Gas pumps, not owned by appellees, were located in front of the store building, and a grease rack hoist was located to the side of the front of this building.

Appellees operated a combined grocery, restaurant, and filling station in the store building which fronted on the highway. Other than the part situated next to the highway, little use seemed to be made of the farm land except to graze some cattle. The dairy barn apparently was not used for that purpose.

The land taken consisted of a strip across the front of the property three hundred and six feet long and thirty feet wide, comprising .23 acre. This included about ten feet of the front of the store building, together with the gas pumps and hoist. Most of the witnesses based their evaluation of damages on the premise that it would be necessary to demolish the building. A temporary easement, comprising .18 acre, was taken for convenience in demolishing the

Jo M. Ferguson, Atty. Gen., Astor Hogg, Chief Asst. Atty. Gen., J. Sidney Caudel, Atty., Highway Department, Frankfort, for appellant.

Diederich & Lycan, Ashland, James E. Adkins, Catlettsburg, for appellees.

MONTGOMERY, Judge.

Charles S. and Nora Rankin recovered judgment against the Commonwealth through its Department of Highways for $39,200 for land taken and for resulting damages to their property in the condemnation of right of way for a highway. On appeal, the Commonwealth insists that the

building. A permanent easement, comprising .29 acre, was taken for a drainage ditch near the south property line.

The county court commissioners awarded $520 for the land taken, $10,000 for moving the store building, and $13,500 for incidental damages to the remaining property. The jury awarded $800 for land taken and $38,400 for damages to the remaining lands.

Two realtors and a Department of Highways right of way agent testified for appellant concerning the value of the property and the damages. The two realtors fixed the value of the land taken at $575, the easement at $45, the building at $18,633.60, and the incidental damages at $5,000, for a total of $24,253.60. The right of way agent fixed the value of the land taken at $240, the easement at $12, the building at $7,000, and the incidental damages at $9,559, for a total of $16,811.

█ The landowner and four witnesses in his behalf testified as to the land value and damages. One of his witnesses was an engineer who was not acquainted with land values in the community. He was permitted to testify, over objection, that the replacement value of the store building was $43,000. Testimony as to replacement cost of new construction is erroneous, since the landowner is entitled to recover only the present value of the property taken in its depreciated condition. Commonwealth, by State Highway Comm. v. Begley, 261 Ky. 812, 88 S.W.2d 920. This point was not urged, however, as reversible error. The engineer, without showing proper qualification, was permitted, without objection, to testify that the value of the hoist was $1,200. The landowner said that he paid in excess of $500 for it five years before but placed a current value of $1,500 on it.

The landowner testified that the value of his property before the taking was $109,100, and after the taking $51,000, for a total loss of $58,100. He introduced pictures of the buildings, including the interior of the store. He was permitted, over objection, to testify that his gross income from the property for the previous year was $133,207.23, without saying what his net profit or taxable income was.

Two realtors placed values of $99,352.50 and $86,500 on the property before the taking and $48,652.50 and $36,150 afterward, making losses of $50,700 and $50,350, respectively. One of the realtors formerly had been an appraiser for the State of Kentucky and had a condemnation proceeding pending against him on the same highway project.

The secretary-treasurer of the local farm loan association was permitted to testify, over objection, that the value of the entire property before the taking was $94,948 and after the taking was $44,093, for a loss of $50,855. It was shown that he was not acquainted with market values of property in that community and had not been acquainted with the property in question until two weeks before he testified. On cross-examination, this witness was asked how much his association would lend on the property. His reply was that he did not appraise it for that purpose.

The assessed values of the property, according to the latest tax return, were: land, $645; block garage, $1,000; five-room concrete block house, $1,300; block store, $1,870; four-room frame house, $1,100; making a total of $5,915. The landowner admitted assessing his property in January 1958 and did not deny his signature on the return. The deputy tax commissioner testified that the property was supposed to have been listed for taxes at 30% of its value, but said: "In a lot of cases it is not."

██ Evidence as to assessed valuation of land when fixed by the owner is competent in a condemnation action for the purpose of acquiring state highway right of way. Commonwealth, by State Highway Comm. v. Combs, 229 Ky. 627, 17 S.W.2d 748; Davidson v. Commonwealth, 249 Ky. 568, 61 S.W.2d 34; Commonwealth v. Salyers, 258 Ky. 837, 81 S.W.2d 859. In

determining the value of land taken for highway purposes, such assessed value, though not conclusive, can be considered in connection with other evidence of value of the property. Crittenden County v. Towery, 264 Ky. 606, 95 S.W.2d 233. Such evidence is admissible on the theory that it is an admission against interest when the value shown is fixed by the landowner. Commonwealth v. Gilbert, Ky., 253 S.W.2d 264. When a landowner signs an assessment list of his property which contains an evaluation of such property, as the landowner did here, he will not be heard to say that he has not fixed the value of his property.

The Court is fully cognizant of the theory that such evaluation is for a different purpose, to wit: payment of taxes, than for the fixing of values in a condemnation action. See 39 A.L.R.2d 214. However, it hardly seems fair to say that as between the Commonwealth and the landowner the land has a different or lesser value for the payment of taxes to the Commonwealth than it does for the payment of tax money for right of way by the Commonwealth to the same landowner. Tax money and the same parties are involved in each transaction; hence, it seems that the assessed value of property to be condemned for state highway right of way and fixed by the landowner should be given considerable weight in determining the value of the property condemned.

The problem of tax assessment values has been recognized as a matter of public knowledge. Fayette County Board of Supervisors v. O'Rear, Ky., 275 S.W.2d 577. See also Luckett v. Tennessee Gas Transmission Company, Ky., 331 S.W.2d 879. It is equally a matter of public knowledge that at that time property throughout the state, on the average, was assessed at about 30% of its value. The deputy tax commissioner testified to this average in Boyd County. Such an average, 30%, cannot be applied to a given value such as here, $5,915, to arrive automatically at $19,701 as a true evaluation. It is realized that there are variables to be considered and that such a rule of thumb may be taken only as indicative of value.

The measurement of damages is frequently difficult. No yardstick or hard and fast rule is available. The rule is stated in Salt River Rural Electric Coop. Corp. v. Thurman, Ky., 275 S.W.2d 780, 781, thus:

"Generally, a verdict will not be disturbed as excessive unless it shows bias or prejudice or is based on estimates unsupported by the facts, or is so extravagant as to create a probability the estimates are not correct."

See also Tennessee Gas Transmission Company v. Teater, Ky., 252 S.W.2d 674; United Fuel Gas Company v. Mauk, Ky., 302 S.W.2d 368, 369; 18 Am.Jur., Eminent Domain, Section 366, page 1008.

As was pointed out in the Mauk case:

"Generally, courts are reluctant to interfere with a verdict of a jury when challenged, either as excessive or inadequate. Nevertheless, the verdict is subject to the supervision of the court. The jury may not, through sympathy or other similar reasons, base its verdict upon testimony that is so incredible and contrary to common knowledge as to be manifestly without evidentiary value. See Coney Island Co., Inc., v. Brown, 290 Ky. 750, 162 S.W.2d 785; 20 Am.Jur., Evidence, Section 1183."

The Court is less reluctant to set aside the verdict of a jury in a condemnation case where the verdict is necessarily based on the opinions of witnesses as to values rather than on statements of facts. In such cases, the qualifications of the witness and the facts given as the basis for the opinion are extremely important. The mere statement of opinion that property is worth a stated amount is worthless without a proper showing that such witness is qualified to know about which he is testifying and then demonstrates it by giving facts as a reasonable basis to support his opinion. Proof of qualifications and facts to support the opinion clothe it with substance and probity.

Otherwise, the opinion stands naked and unsupported. Much of the testimony as to opinions on damage in this case falls in the naked and unsupported class. The opinion witnesses in the present case are not in the category of so-called expert witnesses.

■ The landowner and each of his witnesses, except the engineer, testified to damage by reason of the total destruction of the store building and its removal. Each of them testified to damage to each of the three buildings to the rear of the store building by reason of the obstruction of the view from those buildings to and from the highway by the construction of a new store building. The landowner fixed such damages to the three buildings in the rear at 20% of their value, or a total of $8,000. His three witnesses fixed such damages at 10% to 15% of the value of those buildings in the total sums of $2,672, $4,323.50, and $4,750, respectively. Such damages, if any, arising from the construction of a new building clearly would not be a result of the reconstruction of the highway and would not be incident thereto. Smick v. Commonwealth, Ky., 268 S.W.2d 424. To allow recovery for such damages as well as damages for the removal of the store building would be a fine example of having one's cake and eating it too.

Further testimony indicating the unsound basis of the damage estimates was given concerning the temporary and permanent easements and fencing. The Department of Highways' plans show that about eighty feet of existing fence would have to be moved or rebuilt. Based on testimony that damages for fencing were figured at $5.60 per rod, it would have cost $26.88 to replace with new fence. This was a small item of damage, but no satisfactory statement concerning it was given by any witness, not even the Department's. The landowner estimated his damage to fencing at $500. One of his witnesses estimated it at $266.50, and another said that 44½ rods (734.25 feet) of fencing would be required. One

witness placed the damage by reason of the permanent easement (.29 acre) at $2,500 and the temporary easement (.18 acre) at $1,000. It is unnecessary to detail further testimony of this character. The pictures of the buildings and property do not sustain the exaggerated evaluations placed on them.

The testimony for the appellee is unconvincing, highly speculative, and contrary to common knowledge. There is no reasonable basis given upon which to rest such unrealistic estimates of values and damages. The damages allowed are so excessive that they appear to have little relation to the true market value of the property before and after the taking, and, as said in the Mauk case, "strike us as being unreasonable, and such as to show the jury was actuated by passion or partiality or by prejudice."

The judgment is reversed, with direction to grant a new trial.