**Dorris Joe ROBINSON, Appellant,**

v.

**Ruthie Jane ROBINSON, Appellee.**

Court of Appeals of Kentucky.

May 5, 1978.

Rehearing Denied Aug. 11, 1978.

Sam T. Jarvis, James Tardio, Jarvis, Payton & Kinney, Greenville, for appellant.

Harold M. Streets, Streets & Cisney, Greenville, for appellee.

Before GANT, COOPER and PARK, JJ.

GANT, Judge.

Appellant and appellee were married in 1968, had one child and petition for Dissolution of Marriage was filed in 1975. Each of the parties had owned an interest in a business prior to the marriage, the wife owning a one-half interest in a property known as the Apple House Market and the husband owning the Dairy Maid Drive-In, these businesses being about one-half block apart in Muhlenberg County. Additionally, the parties owned a home in that county. The case was previously appealed to this Court and remanded for specific findings as to value of the property, its status as marital and nonmarital, and for division in accordance therewith. It is from the effort at compliance with the directions of this Court that appellant appeals.

This case follows the regrettable pattern of many divorce cases involving division of property. Herein, only the evidence of the litigants was presented on the valuation of the property without showing that they are properly qualified. The law concerning the qualifications of lay witnesses to testify concerning the value of property has been extended to include the owner witness and has been adequately stated in the case of *Commonwealth, Department of Highways v. Fister*, Ky., 373 S.W.2d 720 (1963), as follows:

> It has always been recognized that there "must be some basis for a knowledge of market values before a witness may express an opinion as to values." *Allen Co., Inc. v. Thoroughbred Motor Court*, Ky., 272 S.W.2d 343, 344. With respect to other lay witnesses, it is required that they have "a knowledge of property values generally" (*Commonwealth, Dept. of*

*Highways v. Tyree*, Ky., 365 S.W.2d 472, 475), or be "acquainted with property values in the vicinity" (*Himlar Coal Co. v. Kirk*, 224 Ky. 383, 6 S.W.2d 480, 481).

.    .    .    .    .

We see no reason why an owner, before expressing his opinion concerning the market value of his real estate, should not have the initial minimum qualifications required of his neighbors. It follows that the qualifications of the owner witness, as other witnesses, must be affirmatively shown *before* his opinion of market values is expressed. *Id.* at 722–23.

Although this case involved the opinion evidence or property owners in condemnation cases, there is no reason that the same law should not apply. As the court stated in the case of *Commonwealth v. Rankin*, Ky., 346 S.W.2d 714 (1960), in another condemnation case:

.    .    . the qualifications of the witness and the facts given as the basis for the opinion are extremely important. The mere statement of opinion that property is worth a stated amount is worthless without a proper showing that such witness is qualified to know about which he is testifying and then demonstrates it by giving facts as a reasonable basis to support his opinion. *Id.* at 717.

The mere fact of ownership does not of itself qualify the parties to give a value. The appraisal of residential, commercial and industrial property has become a science in this day and time and should not be the subject of conjecture and speculation.

■■ The only other evidence given in this case was an exhibit filed by the appellant purporting to list the assessed value of this property according to the Property Valuation Administrator. The PVA did not testify, did not give any basis for such valuation, was not subject to examination by the parties or the court, and was not subject to cross-examination. Basically, his evidence was without probative value. As stated in the case of *Commonwealth v. Rankin, supra* at 717, "[i]n determining the

value of land . . . assessed value, though not conclusive, can be considered *in connection with other evidence of value of property.*" In this case there was no other evidence concerning the value of the property. The evidence offered by the appellant will just simply not suffice, and it was manifest error for the court to place a value on the property without more. If the attorneys practicing domestic relations law do not give the court adequate tools with which to work, they can hardly complain of inequitable results. The standards will hardly improve unless the trial bench demands it. There was simply no way in which the trial court in this action could accurately fix the value of the property which was the subject of the action with the total lack of evidence here. If the parties come to the end of their proof with grossly insufficient evidence on the value of the property involved, the trial court should either order this proof to be obtained, appoint his own experts to furnish this value, at the cost of the parties, or direct that the property be sold.

## MARITAL AND NONMARITAL PROPERTY

APPLE HOUSE MARKET. The evidence disclosed that the appellee did, indeed, own a one-half interest in this business at the time of the marriage. The appellee, her brother, mother and other members of her family had run the business for several years with an unbroken record of failure. The debts of this business were in excess of $58,000. The appellant and appellee both worked and contributed to the operation of the business after they purchased the other one-half interest, paying off the appellee's family and the creditors and reducing the indebtedness from $58,000 to $28,409.96.

DAIRY MAID DRIVE–IN. The evidence disclosed that the appellant had purchased this property prior to the marriage for $30,000, paying $10,000 down and an additional $9,000 before the marriage. There was a lien against this property for the remaining $11,000. Both parties con-

tributed their joint efforts and funds to the operation of this business after marriage and paid off the remaining $11,000 prior to the time of separation.

HOME. It is uncontradicted that this property was marital property, having been purchased by the parties for $30,000 about four years prior to their separation.

As used in KRS 403.190 in referring to restoration of the property of each spouse, the word "property" means equity. If either spouse was the owner of property subject to indebtedness prior to the marriage, the equity in that property shall be considered nonmarital property at the time of separation in that proportion which this equity bore to the value of the property at the time of the marriage. The increase in equity after the marriage attributable to the joint efforts of the parties, including those efforts of the wife as housewife and mother, shall be treated as marital property. Of course, if the increase is not attributable to the team effort or team funds, the increase follows the property and must be restored to the party owning the property before the marriage. See *Sharp v. Sharp*, Ky., 491 S.W.2d 639 (1973). For example, the husband owns real estate valued at $40,000 at the time of the marriage. He has paid $20,000 toward the purchase price and has a mortgage of $20,000 at the time of marriage. After the marriage and through the joint efforts of the husband and wife, the remaining indebtedness is paid. The property is valued at $60,000 at the time of separation. $^{20}/_{40}$ or one-half of the value shall be nonmarital and the remaining one-half shall be considered marital property, so that $30,000 shall be set aside as the value of the nonmarital property of the husband and $30,000 shall be considered subject to division in just proportions. Conversely, if the property has declined in value and is worth only $30,000 at the time of separation, one-half or $15,000 shall be declared nonmarital and $15,000 shall be marital property.

Applying this to the instant case, the wife owned a one-half interest in the Apple House Market. The proof of the appellant indicated that there was no equity existing at the time of the marriage and the appellee did not refute this. The burden to establish value of nonmarital property is on the person claiming that it is nonmarital and the wife having failed to sustain this burden, the court must assume that there was no equity existing at the time of the marriage. Through the efforts of both parties, the indebtedness on the Apple House Market was reduced from $58,000 to $28,409.96. After the value of this property is established, either by competent evidence or sale, the stipulated debts shall be subtracted and the remaining sum shall be considered marital property.

In the case of the Dairy Maid Drive-In, the husband had contributed $19,000 of the $30,000 purchase price prior to marriage. The balance of $11,000 was paid after the marriage and by the joint efforts of the parties. When the value of this property is properly established, $^{19}/_{30}$ of this value shall be set aside to the husband as nonmarital property and $^{11}/_{30}$ shall be included as marital property.

Accordingly, the judgment herein is reversed and this case remanded to the lower court with the following instructions:

1. The court shall direct the parties to establish by competent evidence the value of the Apple House Market, the Dairy Maid Drive-In and the home or, if they fail to do so, shall direct that said property be sold.

2. All of the established value of the Apple House Market and all of the established value of the home shall be adjudged marital property.

3. $^{11}/_{30}$ of the established value of the Dairy Maid Drive-In shall be considered marital property and $^{19}/_{30}$ thereof shall be considered the nonmarital property of the appellant.

4. The marital property and debts shall be divided in just proportions in accordance with KRS 403.190, it being the opinion of this Court that under the proof herein said division should be as nearly equal as possible.

All concur.