Betty J. VANOVER–MAY (formerly Marsh), Appellant,

v.

Oscar Melvin MARSH, Appellee.

No. 88–CA–1854–MR.

Court of Appeals of Kentucky.

Aug. 10, 1990.

Donald Gulick, Louisville, John E. Spainhour, Jr., Shepherdsville, for appellant.

Cheryl S. Karp, Louisville, for appellee.

Before HOWERTON, C.J., and DYCHE and WEST, JJ.

HOWERTON, Chief Judge.

Betty J. Vanover–May (formerly Marsh) appeals from judgments of the Bullitt Circuit Court in her divorce action with Oscar Melvin Marsh. She alleges that this Court is not bound to uphold the trial court's findings when they are based on depositions, that she should have been awarded maintenance, that Oscar's pension was improperly valued, that the court erred in determining marital property, that the court erred in valuing vehicles, that the court erred in not requiring repayment of "loans," that the court erred in failing to award temporary maintenance arrearages and attorney fees, and that the court erred in not requiring Oscar to account for Betty's nonmarital property. We affirm in part and reverse in part.

Betty and Oscar married in 1974. Each had children by a previous marriage. Betty and Oscar signed an antenuptial agreement giving each the right to dispose of their premarital property. Betty owned 40 acres of partially subdivided land, 15 house trailers, two automobiles, and household goods. She had $3,500 in cash. Oscar owned a 164–acre farm, farm equipment, two automobiles, and household goods. He had $4,000 in cash. Betty sold her trailers and most of the lots. Income from the trailers and lots was put in an account, where at least some of Oscar's retirement income was also deposited. During most of the marriage, the couple resided in a house on Oscar's farm, and several improvements to the house were made during this time. Betty sold her residence in the

early 1980's, and Oscar sold his farm in 1985. In April 1985, the couple purchased a house for $54,000. Oscar paid $24,000 on the house from the farm sale, and Betty contributed $30,000 from a Certificate of Deposit. An auction of personal property in 1985 netted $14,817.22, of which $8,800 was transferred by Oscar to his son, James. The notes from the sale of the farm were also transferred to James.

On December 8, 1986, Oscar filed for divorce and obtained an *ex parte* order requiring Betty to leave the marital residence. She left the house without time to inventory or take any substantial amount of her personal property.

Oscar received $560 per month in Social Security benefits and $619.45 per month from a retirement pension. Temporary maintenance of $50 per week was awarded to Betty from December 14, 1986, until the final divorce judgment. The court awarded Oscar $24,000 as his nonmarital interest from the proceeds of the residence, a pickup truck including the lien, a bull, chickens, and $8,880 in the auction proceeds he gave James. The court awarded Betty an automobile including a sizeable lien, $18,571 in her account at the time of separation, a $1,000 ring, and a small interest in Oscar's retirement fund. The excess funds from the sale of the marital home and personal items were equally divided between the parties.

This case was previously before the Court of Appeals in 88–CA–007–MR on the issue of the trial court's granting summary judgment dismissing the third-party complaint against Oscar's son, James. Betty claimed that without including property Oscar wrongfully gave James, the court could not properly decide the maintenance and property issues. The Court of Appeals decided that the antenuptial agreement did not cover all of the financial investments by either party, whether marital or nonmarital.

From the record, it appears that the circuit court has taken no action after the reversal in 88–CA–007–MR. This appeal was pending at the time of the previous reversal.

■ Betty first argues that since the trial court tried the case by deposition, the Court of Appeals is now free to make its own findings of fact. We disagree. In *Largent v. Largent,* Ky., 643 S.W.2d 261 (1982), the court concluded, "The Trial Court is the finder of fact whether the case is tried by deposition or by personal attendance, and the judgment of the trial court may not be reversed unless the findings are clearly erroneous. CR 52.01."

■ Betty next argues that the court erred in failing to award her maintenance. Oscar has an income of $1,179.45 per month from Social Security and a retirement pension, plus paid health insurance provided by the retirement program. Betty was included in the policy until the divorce. Oscar had additional income of $811.10 per month from the farm sale until he transferred the notes to his son. Oscar's living expenses are approximately $700 per month. Betty claims she has an income of $380 per month and expenses of $1,105 per month. At the time of the divorce, Oscar was in ill health and 69 years old, while Betty was 55 years old. The trial court stated, "The wife is not currently employed and her employment opportunities are limited both by her age and inexperience." Betty owned a 25–30 acre tract of land which she valued at $37,000 and Oscar valued at near $125,000. In view of the remand of this case and the fact that the court considered the premarital property Betty owned but not the notes from the premarital farm Oscar owned and sold, the court should reconsider the maintenance issue.

■ Betty argues that the court erred in not finding that her $30,000 contribution to the marital residence and her $18,511 in deposits in her name were nonmarital property. We agree and reverse as to the $30,000, but we affirm as to the other funds. Betty repeatedly testified that the money and interest came from the sale of her nonmarital home. Betty's adult son stated substantially the same in his deposition. The previous owner of the marital home submitted an affidavit which stated,

"I don't remember hearing Oscar Marsh promise Betty Marsh he would pay her back; however, they did say *it was her CD* and that they would cash it to make a $30,000 down payment and pay the balance of $24,000 after selling *their farm*" (emphasis added). In Oscar's deposition, he stated that he did not know where Betty obtained the funds for the C.D. she cashed to pay on the house. It is undisputed that she had considerable income from the sale of nonmarital property in the late 1970's and early 1980's. We believe the trial court clearly erred in holding the $30,000 was marital property. Betty met her burden of proof in claiming the property was nonmarital. *Turley v. Turley*, Ky.App., 562 S.W.2d 665 (1978); *Robinson v. Robinson*, Ky.App., 569 S.W.2d 178, 181 (1978). She did not meet her burden concerning the other money in her accounts. The trial court is reversed as to the $30,000 and affirmed as to the other funds in Betty's accounts.

■ Betty argues the court erred in not requiring Oscar to repay the "loans" to him for improvements. The evidence indicates there were no notes, no repayment dates, or no interest determined by the parties. Betty had income deposited in the trailer park account. At least some of Oscar's retirement and Social Security checks were deposited in the same account. The record reveals numerous expenses were paid from that account—farm insurance, home improvements, hay, church gifts, payments to Oscar for maintenance, farm supplies, farm loan repayments, fertilizer, electric bills, taxes, gravel, auto repairs, building materials, phone bills, medical services, and cash withdrawals. Betty and Oscar clearly were commingling their funds and paying trailer park expenses, farm expenses, personal home improvements, and personal expenses from the account. We do not believe the funds used for improvements were loans, since the funds were so commingled and other evidence of a loan was lacking.

■ It is equally clear that funds from the commingled accounts were used to make improvements to the home and Oscar's farm. These improvements from the funds included aluminum siding, a room addition, and well drilling. To the extent that marital or commingled funds were used to improve nonmarital property belonging to Oscar, Betty is entitled to receive her portion of those commingled funds which contributed to the improvement of Oscar's property. We believe this holding can be read in conjunction with the previous reversal by this Court in this case. In 88–CA–007–MR, we wrote, "the court should adduce evidence as to the value of the enhancement to the farm, if any, and whether such improvement was furnished from funds being the sole property of the appellant." We now believe this adduced evidence should include enhanced improvements made from commingled or marital funds. If the expenditures enhanced the farm or the couple's home on the farm, then the court should consider this in the division of the property on remand.

■ Betty next argues that the trial court erred in its valuation and treatment of pension benefits. We disagree and affirm. Betty was married to Oscar 31 months during the 27 years he earned the pension, or 9.57 percent of the time he worked. The court awarded her half of the pension earned during their marriage, or $30 per month. We find no error in the court's not counting the 9 years of marriage after Oscar's retirement. Betty further argues that she is entitled to a lump-sum payment. We do not feel the court abused its discretion in awarding Betty monthly benefits. *Light v. Light*, Ky.App., 599 S.W.2d 476 (1980); and *Foster v. Foster*, Ky.App., 589 S.W.2d 223 (1979).

Betty argues that the court erred in not assigning her values to the vehicles and in not considering the debts on them when dividing the marital property. Her Chrysler 5th Avenue automobile had both a greater value and a larger loan than Oscar's Dodge truck. Perhaps a qualified appraiser could have added insight into the vehicle's values. However, the court did not abuse its discretion in making the awards as it did.

Betty further argues that the trial court erred in failing to award her attorney fees and maintenance arrearage. The court was within its discretion in not awarding attorney fees. KRS 403.220; *Lampton v. Lampton,* Ky.App., 721 S.W.2d 736 (1986). However, on remand, we do believe that the court should allow Betty any temporary maintenance arrearage as a part of the final judgment and settlement.

Betty's concluding argument is that the court erred in not requiring Oscar to account for her nonmarital property left at the home at the time of the initial separation. We have reviewed the depositions and find them at best to be confusing and contradictory regarding the property. It is regrettable that keepsakes and gifts are lost when a marital breakdown occurs. We believe the trial court handled the situation as best it could, considering the evidence, and we affirm on this issue.

This is a case where large legal fees have developed in comparison to the assets in dispute. The parties will likely be more pleased, and certainly will save on expenses, if each will be reasonable and together they can reach a settlement. Otherwise, the parties can be certain that, in time, the case will be settled for them.

The judgments of the Bullitt Circuit Court are affirmed in part and reversed in part and remanded for reconsideration of maintenance and entry of a judgment consistent with this opinion.

All concur.