Ricky R. JONES, Appellant

v.

Lynn M. JONES, Appellee.

No. 2006–CA–001870–MR.

Court of Appeals of Kentucky.

Feb. 1, 2008.

William Hartman Brammell, Sr., New Castle, KY, for appellant.

James L. Theiss, LaGrange, KY, for appellee.

Before LAMBERT, TAYLOR, and WINE, Judges.

## OPINION

TAYLOR, Judge.

Ricky R. Jones brings this appeal from March 10, 2006, and August 8, 2006, orders of the Henry Circuit Court, Family Court Division (family court) adjudicating prop-

erty and maintenance issues in a dissolution of marriage proceeding. We affirm in part, reverse in part, and remand.

Ricky and Lynn M. Jones were married on June 21, 1986. Two children were born of the marriage. Prior to marriage, Ricky inherited from his grandfather a life estate in a farm consisting of 215 acres.[1] The parties entered into a prenuptial agreement prior to marriage. During the marriage, the parties resided in a residence located on the farm, and Ricky conducted farming operations thereupon.

By decree entered May 18, 2005, the family court dissolved the parties' marriage. Ricky and Lynn entered into an agreement disposing of issues relating to child custody, visitation, and support. By orders entered March 10, 2006, and August 8, 2006, the family court disposed of all outstanding issues related to property division and maintenance. This appeal follows.

■ Ricky's first argument raised on appeal is that the family court erred by classifying payments from the Tobacco Transition Payment Program (TTPP) as marital property. For the reasons hereinafter set forth, we agree.

■ To correctly allocate and divide property owned by parties in a dissolution of marriage proceeding, the court must: (1) classify the property as marital or nonmarital, (2) assign to each party nonmarital property owned by that party, and (3) divide in just proportions marital property. Kentucky Revised Statutes (KRS) 403.190; *Hunter v. Hunter,* 127 S.W.3d 656 (Ky. App.2003).

In its August 8, 2006, order disposing of the parties' Ky. R. Civ. P. 59.05 motions, the family court acknowledged:

A major portion of the husband's objections to the Court's property division regarded future payments to be received from the Federal Tobacco Buyout Program. That program is divided into payments for both a grower's share and an owner's share. Husband's counsel argued vehemently that the owner's share belongs to the owner of the land and is, therefore, not a marital asset subject to division by this Court

. . . .

[T]he Court finds that the overall distribution set by its March 10, 2006[,] Order was fair and equitable, and any adjustments therefrom would require further adjustment to retain the equitable nature. While the husband's counsel may have a legitimate claim regarding the marital asset designation of the owner's portion of tobacco buyout proceeds, the Court believes that the remedy fashioned in its Order was the best method of asset distribution. In effect, the Court left the means of production, (i.e. livestock, equipment, etc.) in the hands of the husband, who is the active farmer in the marriage and divided the streams of income owned to the family as a unit as evenly as practical.

From the order, it appears the family court recognized that a portion of the TTPP payments may have been Ricky's nonmarital property but treated the TTPP payments as marital in order to effectuate a fair distribution of property. We believe the family court erred in this ruling as a matter of law.

KRS 403.190(1) directs that "the court shall assign each spouse's property to him." While the court possesses discretion in the division of marital property, the classification of property as nonmarital and assignment of such nonmarital proper-

1. In this case, we shall sometime refer to the 215–acre farm as the "farm."

ty to its owner is not open to the court's discretion. 15 Louise E. Graham & James E. Keller, *Kentucky Practice, Domestic Relations Law,* § 15.4 (2d ed.1997). As such, the family court erred as a matter of law by classifying the TTPP payments as marital property in order to effectuate a fair distribution of property. The classification of TTPP payments as marital or nonmarital is not discretionary. We shall now undertake a review of facts and law to determine if the TTPP payments are marital or nonmarital property.

Throughout the parties' marriage, tobacco was routinely raised on the 215–acre farm. The farm contained a basic tobacco quota. Through the Fair and Equitable Tobacco Reform Act of 2004, the federal tobacco quota and price support programs were repealed. 7 U.S.C. § 518 *et seq.* (2005). In exchange for termination of such programs, the United States Department of Agriculture distributes payments to quota owners (quota owner TTPP payments) and growers of tobacco (grower TTPP payments) equally over a ten-year period, beginning in 2005 through 2014. These payments are designed, in part, to compensate quota owners and growers of tobacco for loss of the tobacco quota and price support programs. Generally, a quota owner is one who owned a farm with a tobacco market quota or allotment, and a grower is a producer of tobacco in the years of 2002, 2003, or 2004.

In the case *sub judice,* it is uncontroverted that Ricky inherited the life estate in the farm from his grandfather before the marriage and simultaneously inherited the tobacco quota pertaining to the farm. As such, the life estate in the farm and the tobacco quota are clearly classified as Ricky's nonmarital property. *See* KRS 403.190. Pursuant to his nonmarital tobacco quota, Ricky routinely grew tobacco on the farm. He would additionally "lease in" tobacco poundage from other quota owners, thus enabling him to grow more tobacco acreage. As Ricky owned a tobacco quota and also grew tobacco, both quota owner TTPP payments and grower TTPP payments are at issue. We shall address each separately.

For purposes of a dissolution proceeding, we view the quota owner TTPP payments as essentially "compensation" by the government for the taking of the property interest in the tobacco market quota. *See* Matthew Nis Leerberg, *Takings and Statutory Entitlements: Does The Tobacco Buyout Take Quota Rights Without Just Compensation?,* 55 Duke L.J. 865 (2006). It is tantamount to Ricky selling his nonmarital tobacco quota and receiving compensation over a ten-year period. As the quota owner TTPP payments compensate Ricky for his property interest in the nonmarital tobacco quota, it follows that the quota owner TTPP payments are necessarily classified as Ricky's nonmarital property and must be assigned to him.

■ Conversely, the grower TTPP payments essentially supplant income traditionally received from the sale of tobacco. Unlike quota owner TTPP payments, grower TTPP payments do not compensate for the taking of a property interest but, rather, compensate for the loss of income incurred by a grower of tobacco. Thus, for purposes of a dissolution proceeding, we conclude that grower TTPP payments are income.

■ In this case, Ricky routinely grew tobacco on the farm, and the income derived from the sale of such tobacco was income produced by the farm, Ricky's nonmarital asset. The grower TTPP payments essentially supplanted this tobacco income and, likewise, constitute income produced by the farm, Ricky's nonmarital asset. Under the terms of the prenuptial agreement, Ricky and Lynn agreed that

Ricky's life estate in the farm "together with the income produced thereby, shall continue and remain the separate property" of Ricky. As such, we conclude that the grower TTPP payments are properly classified as Ricky's nonmarital property and must be assigned to him.[2]

■ Ricky further contends the family court erred by finding a marital interest in the increased value of his life estate in the farm and in valuing such marital interest. We shall initially address whether the family court properly found a marital interest in the increased value of Ricky's life estate in the farm.

The family court found that the parties made substantial improvements to the farm with marital assets. These improvements included renovation of the main house and construction of a garage and lake. The family court found that the actual cost of improvements to the farm totaled $67,000.00. The family court then adjusted this amount ($67,000.00) by Ricky's "life estate valuation formula" and concluded the marital property interest was $44,648.00.

KRS 403.190(2)(e) provides that marital property includes all property acquired by either spouse after marriage except:

The increase in value of property acquired before the marriage to the extent that such increase did not result from the efforts of the parties during marriage.

In this case, the life estate in the farm was acquired by Ricky before the parties' marriage. Under KRS 403.190(2)(e), any increase in value of property acquired before marriage is nonmarital unless the increase in value is attributed to "the efforts of the parties during marriage." The family court found that marital assets were expended to improve the farm during the marriage. To the extent that marital assets increased the value of the life estate in the farm, such increase in value must be classified as marital under KRS 403.190(2)(e). The more troublesome question presented is the proper valuation of such marital increase in value of the life estate in the farm.

■ The family court essentially equated actual cost of improvements to the life estate in the farm with increase in value to the life estate in the farm. We view this as clear error. KRS 403.190(2)(e) plainly speaks in terms of "increase in value." To properly calculate the increase in value attributed to marital improvements upon property acquired before marriage, the court must subtract the fair market value of the property at the time of dissolution without marital improvements from the fair market value of the property at the time of dissolution with marital improvements. *See* 41 *Am.Jur. 2D Improvements* § 27 (1995).[3] The difference between such fair market values yields the increase in value attributed to marital improvements upon the property. *See id.* As to a life estate acquired before marriage, a party may be compensated for the increased value attributed to marital improvements thereon, "not to exceed the value of the improvements." *Walters v. Walters,* 782 S.W.2d 607, 608 (Ky.1989).

2. To clarify, all grower Tobacco Transition Payment Program (TTPP) payments are Ricky's nonmarital property regardless of whether these TTPP payments are attributed to his nonmarital tobacco quota or to the "leased in" tobacco poundage.

3. In this Commonwealth, the proper date to value marital assets is the date the decree of dissolution is entered. *Culver v. Culver,* 572 S.W.2d 617 (Ky.App.1978). Thus, any appreciation in value of an asset occurring after the decree of dissolution is entered is generally nonmarital. *Culver,* 572 S.W.2d 617.

■ When determining the fair market value of real property with improvements and without improvements, expert opinion is ordinarily necessary. *Robinson v. Robinson,* 569 S.W.2d 178 (Ky.App.1978), *overruled on other grounds by Brandenburg v. Brandenburg,* 617 S.W.2d 871 (Ky.App. 1981). To be qualified to express an opinion upon fair market value of real property, a witness, including the owner thereof, must possess "some basis for a knowledge of market values." *Robinson v. Robinson,* 569 S.W.2d. at 179 (quoting *Com. Dept. of Highways v. Fister,* 373 S.W.2d 720, 722 (Ky.1963)). Simply stated, the mere ownership of property does not qualify a lay person to give an opinion upon market value. *Robinson,* 569 S.W.2d 178. In any event, the actual cost of improvements may be considered as evidence bearing upon fair market value but should not be the sole factor. Where the parties fail to offer sufficient proof as to fair market value of real property, we remind the family court of our Court's decision in *Robinson:*

> There was simply no way in which the trial court in this action could accurately fix the value of the property which was the subject of the action with the total lack of evidence here. If the parties come to the end of their proof with grossly insufficient evidence on the value of the property involved, the trial court should either order this proof to be obtained, appoint his own experts to furnish this value, at the cost of the parties, or direct that the property be sold.

*Id.* at 180.

Upon remand, the family court shall calculate the marital increase in value of the life estate in the farm by subtracting the fair market value of the farm at the time of dissolution without marital improvements from the fair market value of the farm at the time of dissolution with marital improvements; then, the court shall adjust this amount by a life estate valuation formula. However, in no event, shall the compensation for the marital increase in value to a life estate exceed the "value of the improvements" thereon. *See Walters,* 782 S.W.2d at 608. Considering the complexity of such fair market values, expert testimony will most likely be required. *See Robinson,* 569 S.W.2d 178.

Ricky also contends the family court erred by awarding maintenance to Lynn. Specifically, Ricky argues the family court's findings of fact are insufficient to support the maintenance award to Lynn in the amount of $300.00 per month for twenty-eight months.

■ To be entitled to an award of maintenance, Lynn must demonstrate a lack of sufficient property to provide for her reasonable needs and an inability to support herself through appropriate employment. *See* KRS 403.200(1); 16 Louise E. Graham & James E. Keller, *Kentucky Practice, Domestic Relations Law,* § 16.5 (2d ed.1997). Thus, an award of maintenance may only be made after nonmarital property is assigned and marital property is divided between the parties. *Hollon v. Hollon,* 623 S.W.2d 898 (Ky.1981). As entitlement and amount of maintenance are dependent upon the marital and nonmarital property allocated to the party, it is axiomatic that a maintenance award must also be vacated for reconsideration where the underlying property award was reversed on appeal. As we have reversed part of the family court's property award to Lynn, the maintenance award must, likewise, be vacated and remanded for reconsideration in light of the revised property award. *See id.*

■ Ricky finally contends the family court abused its discretion by awarding

attorney fees to Lynn.[4] Specifically, Ricky contends that Lynn possesses the financial resources to pay her attorney fees and that the award of $5,000.00 was an abuse of discretion. We disagree.

 The trial court has broad discretion in awarding attorney fees to either party in a dissolution proceeding. *Tucker v. Hill*, 763 S.W.2d 144 (Ky.App.1988). It is well-established that the court must consider the financial resources of both parties and may award attorney fees only where an imbalance of such resources exists. KRS 403.220; *Gentry v. Gentry*, 798 S.W.2d 928 (Ky.1990); *Glidewell v. Glidewell*, 859 S.W.2d 675 (Ky.App.1993). If the record on appeal supports the trial court's determination of an imbalance in the parties' financial resources, an award of attorney fees will not be disturbed on appeal. *Wilhoit v. Wilhoit*, 521 S.W.2d 512 (Ky.1975).

In the case *sub judice*, the court determined there was an imbalance in the parties' respective financial resources. Specifically, the court pointed out that Ricky continued to live "rent free" on the farm and retained his nonmarital interest in the livestock and farm gate inventory. The court further noted that Lynn was leaving the marriage with only "a small home which is fully encumbered," a vehicle, a one-half interest of the couples' retirement account, and a portion of the TTPP payments.[5] As such, the family court awarded Lynn $5,000.00 in attorney fees. Based upon the apparent imbalance of financial resources between the parties, we are unable to conclude that the family court abused its discretion in awarding Lynn a portion of her attorney fees.

4. The family court specifically ordered that attorney fees be paid directly to Lynn M. Jones, rather than to her counsel.

For the foregoing reasons, the orders of the Henry Family Court are affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

ALL CONCUR.

5. Pursuant to this opinion, we note that Lynn will not receive any portion of the payments from the Tobacco Transition Payment Program.