RENDERED: NOVEMBER 1, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0591-MR

EARL R. JEAN                                    APPELLANT


                    APPEAL FROM JEFFERSON FAMILY COURT
v.                    HONORABLE DERWIN L. WEBB, JUDGE
                        ACTION NO. 19-CI-503813


KAREN SUZANN JEAN                         APPELLEE

AND

NO. 2023-CA-0808-MR

EARL R. JEAN                                    APPELLANT


                    APPEAL FROM JEFFERSON FAMILY COURT
v.                    HONORABLE DERWIN L. WEBB, JUDGE
                        ACTION NO. 19-CI-503813


KAREN SUZANN JEAN AND
NICOLE M. KERSTING                        APPELLEES

<u>OPINION</u>
<u>REVERSING AND REMANDING</u>

** ** ** ** **

BEFORE: ECKERLE, A. JONES, AND TAYLOR, JUDGES.

ECKERLE, JUDGE: In these consolidated appeals, Appellant, Earl R. Jean ("Husband"), seeks review of the Jefferson Family Court's rulings regarding the valuation of property, marital interest of his ex-wife, Appellee, Karen Suzann Jean ("Wife"), in real estate and other property, debt allocation, maintenance, and attorney fees. After careful review, we reverse and remand.

## I. Factual and Procedural History

Before marrying Wife, Husband had already inherited 120 acres of real property ("the Farm") from his family. While they dated, the couple resided at Wife's nonmarital home. In 2003, Husband and Wife married and moved onto the Farm. Wife sold her former home and used the sale proceeds to renovate a barn on the property where they lived. During the marriage, Husband and Wife built a home that they shared on the Farm. More than 15 years after marriage, in 2019, Wife filed a petition for dissolution of marriage. They had been separated for some time before the petition. When Wife instituted divorce proceedings, she was about 67 years of age, and Husband was about 64. No children were born of their marriage. Husband had been self-employed as a machinist. Wife had worked part-time as an aide at some point during the marriage and took care of the household.

However, the Social Security Administration eventually declared her disabled due to arthritis. Husband suffered a stroke and claimed disability.

During divorce proceedings, the parties appeared to concede that the Farm is Husband's nonmarital property. Nonetheless, they dispute the value and ownership of the residence on the land. They also vehemently argue about Wife's marital interest in the home.

Property valuation was a *major* item of contention before the Family Court. Prior to trial, Husband stated in an interrogatory response that the fair market value of the entire property was $1,387,680, which included a value of $591,780 for the home alone.[1] He also noted that in 2021, the Property Valuation Administrator ("PVA") had assessed the entire property with the home and including four other structures at $1,478,590. Husband later repudiated the $591,780 figure. The Family Court gave no credence to the second, seemingly superseding figure. Wife, on the other hand, in her verified, final pretrial disclosure statement, divided the Farm into two tracts. She valued one at $590,000 and another at $4,000,000. Trial Court Record ("R.") at 179. Immediately before trial, Wife had asked the Family Court to appoint an expert appraiser, but that Court denied the request as untimely.

---

[1] This discovery has been characterized as verified. Yet, the original response was not; only the second disclosure was verified.

Both parties admit that the home's construction was financed with $161,000 of Husband's money that he had unilaterally acquired from selling his other nonmarital, real property. The home was also built on Husband's nonmarital land, but this undisputed point has been glossed over repeatedly by the parties and the Family Court. However, Wife maintains that Husband eventually depleted his nonmarital funds, and they took loans to finish the construction. She also listed chores that she performed on the home during construction and household items she purchased. Husband, on the other hand, asserts that the home was entirely his nonmarital asset because it was built on his nonmarital land using his nonmarital funds. He also argues that he repaid the loans from other nonmarital funds, the loans were not specifically related to home construction, and the loans were taken out during the marriage and after construction.

The Family Court conducted a two-day bench trial to address the heated dispute. It started the trial with one day of proceedings in June of 2022 and concluded the second day two months later, in August of 2022. Both Husband and Wife testified at trial. However, neither presented an expert appraisal of the value of the land, home, or other structures. The Family Court allowed the parties to offer lay testimony as to value, and it considered the PVA assessment.

The following year, in 2023, the Family Court issued a series of decisions based upon the trial that had occurred six months earlier. First, the

-4-

Family Court found that the home had a value of $591,780, based solely upon Husband's earlier, but later contested, interrogatory response. Whether this ruling encompasses real property or just the home's structure is unclear, as it was not specific and not based upon an expert appraisal. Second, the Family Court held that the home was a marital asset, based largely upon the parties' marital equity loan. As with the property value, the Family Court's ruling was conclusory and left many questions unanswered. Third, the Family Court found that Husband had only a $67,000 nonmarital interest in the marital home, and it divided equally the remaining number it had achieved based on Husband's disavowed, lay valuation of the home. Based on these calculations, it determined that Wife's marital interest in the home was $262,390 ($591,780 minus $67,000 divided by two). The Family Court also awarded Wife maintenance of $1,000 per month for five years, retroactive to the date she vacated the marital residence, which was before she had requested it by motion. This order resulted in an arrearage totaling over $40,000, and the Family Court ordered Husband to pay it within 90 days. Husband filed appeal No. 2023-CA-0591-MR from those decisions.

Subsequently, the Family Court ordered Husband to pay $25,300 towards Wife's attorney fees. Husband filed appeal No. 2023-CA-0808-MR from that decision. We ordered the appeals to be consolidated and will resolve both in this combined Opinion. Additional facts will be developed below, as necessary.

**II. Analysis**

Kentucky Revised Statutes ("KRS") 403.190(1) provides in relevant part that "[i]n a proceeding for dissolution of the marriage . . . the court shall assign each spouse's property to him [or her]. It also shall divide the marital property without regard to marital misconduct in just proportions . . . ." Marital property, other than some limited exceptions, includes "all property acquired by either spouse subsequent to the marriage . . . ." KRS 403.190(2). In many divorce cases, "some property may have both marital and nonmarital components by virtue of the fact that it was purchased with a combination of marital and nonmarital funds." *Smith v. Smith*, 235 S.W.3d 1, 5 (Ky. App. 2006).

"The question of whether an item is marital or nonmarital is reviewed under a two-tiered scrutiny in which the factual findings made by the court are reviewed under the clearly erroneous standard and the ultimate legal conclusion denominating the item as marital or nonmarital is reviewed de novo." *Id.* at 6. We review a Family Court's decision about how to divide marital property under the deferential abuse of discretion standard. *Id.* And, of course, we may affirm on alternate grounds supported by the record and applicable law. *Mark D. Dean, P.S.C. v. Commonwealth Bank & Tr. Co.*, 434 S.W.3d 489, 496 (Ky. 2014).

## A.  Valuation of the Marital Residence

Property individually owned by a spouse prior to marriage is indubitably nonmarital property.  *Chenault v. Chenault*, 799 S.W.2d 575, 580 (Ky. 1990).  KRS 403.190(3) creates a presumption that the increase in value of nonmarital property is marital if it was the result of the joint efforts of the parties but nonmarital if the increase was due to general economic conditions.  *Travis v. Travis*, 59 S.W.3d 904, 909 (Ky. 2001).  Family Courts' valuations of properties and residences must be based upon sufficient evidence and be rendered in accordance with sound legal principles.  *Young v. Young*, 314 S.W.3d 306, 308 (Ky. App. 2010) ("We review a trial court's determinations of value and division of marital assets for abuse of discretion.").

Here, the total real property that Husband had owned prior to marriage is not at issue *per se* because the parties have stipulated that it is Husband's sole, inherited-from-his-family, nonmarital real property.  However, the Family Court did not treat the value of the land on which the residence was built as Husband's nonmarital contribution, even though it was undisputed that this land was his alone.  This failure is likely due to the lack of any evidence as to the value of that underlying parcel of land.

Though not discussed by the parties or the Family Court, we have long held that trial courts cannot value marital property solely from valuations

offered by the property's owners – unless those owners "are properly qualified." *Robinson v. Robinson*, 569 S.W.2d 178, 179 (Ky. App. 1978), *overruled on other grounds by Brandenburg v. Brandenburg*, 617 S.W.2d 871, 873 (Ky. App. 1981). Of course, a property owner is permitted to "set[] a value on his [or her] own property." *Roberts v. Roberts*, 587 S.W.2d 281, 283 (Ky. App. 1979). "There must be some qualification for giving an opinion, however. Mere ownership does not qualify a party to establish a true value." *Id. Robinson* has been the law of the land for nearly 50 years, and we have steadfastly continued to adhere to its core holding regarding property valuation. *See*, *e.g.*, *Jones v. Jones*, 245 S.W.3d 815, 820 (Ky. App. 2008) (citing *Robinson* for the conclusion that "[w]hen determining the fair market value of real property with improvements and without improvements, expert opinion is ordinarily necessary. To be qualified to express an opinion upon fair market value of real property, a witness, including the owner thereof, must possess some basis for a knowledge of market values. Simply stated, the mere ownership of property does not qualify a lay person to give an opinion upon market value.") (internal quotation marks and citations omitted).[2]

---

[2] We have held that a Trial Court may value property based on uncontradicted testimony offered by one owner. *Turley v. Turley*, 562 S.W.2d 665, 667 (Ky. App. 1978). However, the parties here offer contradictory values.

In laying bare the minimum qualifications that a property owner must have in order to testify about a property's "true value," *Robinson* and *Roberts* each cite to a condemnation case, *Commonwealth, Dep't of Highways v. Fister*, 373 S.W.2d 720, 722 (Ky. 1963), which provides as follows:

> After extensive research we have been unable to find a persuasive reason for the arbitrary rule that mere ownership of realty automatically qualifies such owner to render a valid opinion concerning its market value at any given time.
>
> It is true an owner may properly be presumed familiar with the character and extent of his property, but this is only one of two necessary elements in the appraisal of its value. The other element is some knowledge of property values. While the owner may have a general concept of the worth of his property based upon what he paid for it (and evidence of this price ordinarily is competent . . . ), it does not sufficiently qualify him to express an objective opinion of its current *market value*.
>
> It has always been recognized that there must be some basis for a knowledge of market values before a witness may express an opinion as to values. With respect to other lay witnesses, it is required that they have a knowledge of property values generally, . . . or be acquainted with property values in the vicinity . . . .
>
> We see no reason why an owner, before expressing his opinion concerning the market value of his real estate, should not have the initial minimum qualifications required of his neighbors. It follows that the qualifications of the owner witness, as other witnesses, must be affirmatively shown *before* his opinion of market values is expressed.

> The net effect of our decision on this question is that the owner of real estate shall *not be presumed* adequately qualified to express an opinion of market values by reason of ownership alone.

*Fister*, 373 S.W.2d at 722-23 (internal quotation marks and citations omitted).

*Accord, e.g.*, Louise Everett Graham and James E. Keller, 15 Ky. Prac., *Domestic Relations Law* § 13:3 (2024); *Summe v. Gronotte*, 357 S.W.3d 211, 213 (Ky. App. 2011).

In the case *sub judice*, the parties did not jointly agree on the fair market value of the home. They each submitted their own lay opinions as to the value, but neither Husband nor Wife was qualified to offer such an opinion. Neither had been employed as a residential, real estate appraiser. Neither proffered any training, education, or experience in that field. Neither professed any familiarity with real estate values in the neighboring areas. Neither showed any basis for knowing or putting forth a reliable market value. Husband owned the property before marriage, but this fact alone does not render him competent under Kentucky law to opine about the fair market value of his land. And Husband later withdrew his initial tender of approximated value. Wife did not even own any of the property prior to marriage, thus rendering her even less capable of offering a reliable opinion on the matter. The Family Court even acknowledged that it did not know the manner by which Husband had arrived at his figure, but it used that number anyway, even after Husband challenged it.

Therefore, the Family Court should not have allowed either Husband or Wife to offer "evidence" of the property's supposed value. And it could not accept one unfounded number from Husband anymore than it could have accepted a second unfounded number from him, especially without any foundation for a finding that one number was more reliable than another. It likewise had no basis by which to accept Wife's proffer. The Family Court, as all Trial Courts, serves as a gatekeeper to allow only reliable, qualified evidence into Court. Because it failed in this role, the Family Court did not base its valuation upon sufficient evidence and did not render it in accordance with sound legal principles. *Young*, 314 S.W.3d at 308. Accordingly, while we appreciate the Family Court's efforts in this difficult case, we must find that it abused its discretion in offering any credence to this lay testimony as to a residential fair market value of land.

The Family Court compounded this problem by relying on a PVA assessment that Husband had offered. The Family Court offered no reason for this reliance. At one point, it even stated that it did not know the source of the figure, even though it had received the assessment. Regardless, the Family Court did not clarify whether it used the figure because it was a PVA assessment or because Husband had first offered it (and then withdrew it). Because the Family Court may have relied upon it, we must offer some guidance on the proper use of PVA

-11-

assessments, as this case is being remanded for a proper determination of value, which must specify the source(s) used.

A Family Court may consider a PVA assessment when determining the value of real property. "PVA assessments constitute relevant and probative evidence." *Borders Self-Storage & Rentals, LLC v. Transportation Cabinet, Department of Highways*, 636 S.W.3d 452, 456 (Ky. 2021). While not required to adopt wholesale a PVA assessment, a finder of fact may use its discretion to weigh PVA and other evidence of value accordingly:

> As stated in the case of *Commonwealth v. Rankin* [346 S.W.2d 714, 717 (Ky. 1960)] . . . "(i)n determining the value of land . . . assessed value, though not conclusive, can be considered [i]n connection with other evidence of value of property."

*Robinson*, 569 S.W.2d at 180. Thus, as part of the evidentiary package here, the Family Court could have heard testimony from the PVA or accepted the assessment into evidence as a public record. Kentucky Rule of Evidence 803(8). In *Borders*, the Supreme Court allowed a PVA assessment in a condemnation case where the Trial Court had already appointed appraisers and where the landowner testified and wanted to use that assessment. The Supreme Court in *Borders* emphasized that a PVA assessment does not "constitute[] a final and unassailable determination of value. Rather, it is one factor to be considered by the jury in evaluating and determining the appropriate value of the land to be condemned."

-12-

*Borders*, 636 S.W.3d at 456; *cf. Roberts*, 587 S.W.2d at 283 ("a bare exhibit of a property assessment ha[s] no probative value"). "Testimony regarding the PVA's value would be subject to challenge and parties are free to argue the weight to be given to such valuations." *Borders*, 636 S.W.3d at 456.

Here, the value of the PVA assessment was hotly contested. Thus, the Family Court could not adopt it on its face as the authoritative value of the property without specific findings of its reliability and relevance. There were none here. Instead, the Family Court did not specifically base its valuation on the PVA assessment, even though it used the same number provided by Husband. Likewise, the Family Court did not hear testimony from a PVA official. It also failed to admit the assessment into evidence under the hearsay exception for public records. Thus, the Family Court could not have considered it – if indeed it did. However, if the Family Court had properly admitted the assessment into evidence, it could have considered the assessment along with the other evidence, such as assessment provided by expert appraisers, as in *Borders*.

However, we must repeat that the Family Court must make specific findings on these issues. The PVA assessment here is much less relevant than that used in *Borders*. First, this PVA assessment occurred in 2021. Accordingly, it did not account for the value of the property before the marriage – nearly 20 years earlier in 2003. The Family Court provided no way of knowing that 2003

-13-

nonmarital value. Likewise, the Family Court heard no value at the time of the home building in 2008. A value obtained solely after the divorce proceedings began is of minimal, if any, use standing alone. Further, we have no valuation here of the value of the tract on which the residence is even located – and if it can even be severed.

Thus, neither we nor the Trial Court had any manner of knowing the amount of the increase in the value of nonmarital property during the time of the marriage. Importantly, if the Family Court were to use a PVA assessment, it needed to use the 2021 valuation in conjunction with a 2003 valuation at the time of marriage and a 2019 valuation at the time of the institution of divorce proceedings. Without taking any evidence of such values, the Family Court cannot reasonably divide the property. And likewise, no one yet knows whether any increase is marital because of the joint efforts of the parties or nonmarital because of general, economic conditions. Reliable, relevant evidence is required before making these determinations.

The fact pattern of this case is similar to *Robinson*. "[W]e cannot let indistinguishable cases yield distinguishable results in the interests of expediency." *W.H.J. v. J.N.W.*, 669 S.W.3d 52, 57 (Ky. App. 2023). And for the same reasons, we must reverse and remand the Family Court's valuation. On remand, the Family Court must follow our directive in *Robinson*:

-14-

> If the parties come to the end of their proof with grossly insufficient evidence on the value of the property involved, the trial court should either [sic] order this proof to be obtained, appoint [its] own experts to furnish this value, at the cost of the parties, or direct that the property be sold.

*Robinson*, 569 S.W.2d at 180.

Thus, the Family Court must, at the very least, direct the parties to submit expert testimony of their own at a new trial. Alternatively, it may appoint an expert of its own at the parties' expense. As a third and final option, it may direct the property to be sold. When obtaining values of the property in order to divide it potentially, the Family Court will need an expert appraisal of the real property as a whole, including separately the land underlying the residence, the residence itself, and any other structures. An equitable distribution – if such distribution is ultimately made – will have to be based upon this type of specific evidence.

### B. Property Allocation and Division

Once the Family Court receives proper, expert valuation(s) of the real property as a whole, the home, the property underlying the residence, and the other structures, and once it then makes a corresponding valuation of its own with sufficient factual findings, the Family Court must allocate the nonmarital property individually according to law. As we are remanding this case due to the lack of a qualified valuation, once the Family Court receives and determines an appropriate

-15-

valuation, it will once again be tasked with making a financial distribution.

Accordingly, we will provide some additional guidance on this issue in an attempt

to avoid a second appeal.

The Family Court initially made the following relevant findings:

> The parties do not dispute that the initial source of the funds to build the home came from [Husband], who sold a portion of his non-marital land . . . for $161,000.00.  It is not clear from the testimony and documents presented to the Court, where the remaining funds, if any, came from.  Additionally, there have been loans taken out against said property totaling approximately $94,000.00 during the marriage, which were thereafter paid with marital funds.  As such, the Court finds that [Husband's] non-marital interest in the residence is $67,000.00.

> According to [Husband], the marital residence has a fair market value of $591,780.00 and as there has been no formal appraisal for the same, the Court adopts that amount as the value of the marital home.  With the determination of the value of the home being $591,780.00 and [Husband's] non-marital interest being valued at $67,000.00, the marital interest to be divided would be $524,780.00.  As such, [Wife], would be entitled to equity in the amount of $262,390.00. . . .

R. at p. 420.

In response to Husband's post-judgment motions, the Family Court

made these additional findings:

> The bank records from [Husband's] account ending in 0444 from 2008 – March, [sic] 2022 indicate that $94,010.36 was paid towards a line of credit against the property.  Because this account was not [Husband's]

-16-

"business account," it would have been marital in nature. [Husband], did not bear his burden of proof [to show] that the account or these payments were non-marital in nature, so as a result, the Court found that his non-marital portion was limited to $67,000.00 and gave [Husband] credit for the same.

As for the fair market value of the residence, neither party had the property formally appraised. [Husband] introduced the Property Valuation records in an attempt to show a lower value for the residence. However, such records are not an accurate depiction of fair market value at any given time. Therefore, [the] Court used [Husband's] own assessment of the same – $591,780.00. He now argues that he does not know where that figure came from. While the Court does not claim to know the factors used by [Husband] to arrive at said amount, said value was provided by him as part of his verified financial disclosure to the Court.

The Court will not disturb its prior ruling that [Wife] would be entitled to equity in the amount of $262,390.00.

R. at 613-14.

Under KRS 403.190(2), all property acquired during marriage is presumed to be marital, with some, limited exceptions. But before dividing marital property, a court must first assign a party's nonmarital property individually. A claimant must trace his nonmarital property into a specific asset. *Maclean v. Middleton*, 419 S.W.3d 755, 767 (Ky. App. 2014). If the claimant does so, then the Family Court must assign the specific property to him as nonmarital property. *Id.*

-17-

It is without dispute that the loans at issue here were incurred during the marriage. However, that fact alone does not automatically render them marital. "[T]here is no presumption that debts incurred during the marriage are marital." *Gonzalez v. Dooley*, 614 S.W.3d 515, 524 (Ky. App. 2020).

The Family Court noted Husband's significant, nonmarital contribution towards home construction. Its very concise ruling notes that the $161,000 may have covered all of the construction. This is especially true because the land was already owned by Husband. However, the Family Court then immediately mentioned loans in general and in lump sum, and it then offered the cursory conclusion that the home was both marital and nonmarital. While the home was constructed during the marriage; Wife had some, limited involvement; and loans were taken, the Family Court did not sufficiently explain its classification of the home as marital. It must first rule specifically as to whether the home's construction was entirely financed by Husband's sole nonmarital funds of $161,000, which is what he claims and what the Court alluded to in its ruling. If so, the loans taken during the marriage are not relevant to this inquiry and certainly not dispositive of the issue of whether the home constitutes marital property. Moreover, the Family Court's analysis must address the value of the land Husband owned prior to marriage that underlies the residence and beyond.

Instead, the Family Court here essentially began its ruling by finding that Husband's nonmarital interest in the $0.5 million home to which he made a $161,000 investment on his nonmarital $1.5 million property was $67,000. It then awarded Wife quadruple the amount in marital interest that it had awarded Husband in nonmarital interest. Setting aside the incongruity apparent on the face of such an award, there are several problems with this conclusion. First, of course, the home's value was not properly predicated on reliable evidence, as discussed, *supra*.

Second, the Family Court did not award Husband his $161,000 of nonmarital contributions at the outset of any analysis. The Family Court instead skipped to dividing what it concluded was the remaining marital interest without any finding that there was any marital interest left. Missing entirely is evidence of the cost of construction beyond $161,000. Also completely absent is any discussion of how the home increased in value five-fold after construction. And the Family Court's analysis is devoid of mention that Husband owned the land under the residence outright. And if the Family Court had a proper appraisal of the value, it should have awarded Husband the value of his nonmarital land at the beginning.

**Moreover, the Family Court received no valuation of the residence at the time of construction and at the time of divorce. It**

**undoubtedly increased in value over that time. While the increase in value of nonmarital property is presumed to be marital, this presumption can be overcome by a showing that the increase was due to general, economic conditions and not the joint efforts of the parties. The Family Court took no proof on these crucial issues of fact.**

Third, the Family Court did not require traceable proof about the loans to make an accurate determination of whether and or even to what extent they were marital or nonmarital. Wife did not submit any evidence that she contributed any nonmarital funds to build the home. She said that she performed some of the construction tasks, but she did not submit a value for those tasks. She also claimed that the parties took out marital home equity loans, but Husband contested that evidence with his own showing that the loans were for other purposes, and that he alone paid them back with his nonmarital funds. The uncontroverted evidence showed that Husband sold nonmarital Farm property to avoid taking out mortgages to finance home construction. At most Wife's testimony established that several loans were taken out during the marriage for various purposes. This evidence was insufficient to support the Family Court's findings.

"Kentucky courts have typically applied the 'source of funds' rule to characterize property or to determine parties' nonmarital and marital interests in such property." *Travis*, *supra*, at 909 (footnotes and citations omitted). The

Family Court stated that Husband did not carry his burden of tracing his nonmarital funds to the home's construction. But actually, he did. Indeed, the only specific, tracing evidence presented to the Family Court was that Husband alone provided all of the construction cost from his nonmarital funds. The parties did not use a joint checking account. Husband made loan payments from a checking account which was in his name only.

Wife contended that the parties took $94,000 in loans to finance the construction, which were paid off using marital funds. As this was her argument, and not his, the Family Court's finding that he bore the burden of proof to connect the loans to the construction was a misstatement of the law.

And Wife submitted no traceable evidence to support her burden of proving the conclusion ultimately reached by the Family Court that both parties took out loans of $94,000 to be paid by marital funds to finance home construction. Wife did not show any specific dollar amounts of loans that were allegedly taken during construction itself, that they were used for that construction as opposed to other purposes, and that Husband did not pay off the loans with nonmarital funds. Instead, she only testified that she periodically wrote checks to Husband, some of which were introduced as exhibits. The facts surrounding these checks remains unknown. Indeed, in her brief, she concedes that she offered no tabulation of the loans, and that the Family Court arrived at the $94,000 sum without showing its

own math. Appellee Brief, p. 2. We do not know how the Family Court arrived at this figure. However, it is clear that this calculation ignored Husband's testimonial evidence that he alone paid such marital debt for these loans down to zero. Appellant's Opening Brief, p. 14.

Although Wife provided proof that she used $7,500 from the sale of her nonmarital home (which Husband claimed was closer to $5,000), she did not trace those proceeds into home construction. Rather, she said that she used that money to renovate a barn on Husband's Farm where they lived prior to the home's construction. Wife also claimed that both parties worked on the Farm and boarded horses, using sweat equity and receiving income from boarding horses. She did not trace any amounts of either into the home construction. She provided evidence that she purchased light fixtures, vanities, and other small items, but did not show that she contributed to the cost of construction at all.

Fourth, even if there had been proof that Husband and Wife took loans totaling $94,000 to finance home construction alone – and manifestly there was not – the Family Court is not permitted to allocate all of that "marital" debt to Husband and charge it against his nonmarital financing. The attribution of that debt is as troublesome as was its calculation. At the outset, it would appear that the Family Court should have subtracted this debt from the total value of the home *before* dividing the remainder between the parties. A marital debt should reduce

-22-

the value of the home's marital interest. Instead, the Family Court subtracted *all* of this marital debt from Husband's nonmarital contribution. Surely Wife must be responsible for some marital debt and not be shielded from any of it merely because she made no nonmarital financial investment. We do not know because the Family Court provided no explanation for using this method, quite possibly because there was no proper valuation of marital value from which to subtract marital debt. But even using its novel method, the Family Court, at the very least, would have had to subtract only half of a potential marital loan of $94,000 (*i.e.*, $47,000) from the initial $161,0000 nonmarital investment. This would have resulted in a finding of $114,000 in Husband's nonmarital property (versus $67,000). Upon remand, the Family Court must make findings detailing its reasoning for making its calculations.

Detailed rulings from the Family Court as to the various issues surrounding these loans are crucial because that Court primarily used these very loans as the primary reasoning for classifying the residence as marital. It then assigned all of the debt solely to Husband. If the loan was Husband's alone, then the Family Court cannot properly use it to make the residence a marital asset. Moreover, it should have added the $94,000 to the $161,000 of Husband's nonmarital investment, for a sum of at least $255,000 (plus the land). If the loan was marital, then Wife would be responsible for some of it. And we would need to

know which portions of loans were used to build the home. We cannot accept cursory findings on these critical matters.

The Family Court did not make the required factual findings of: the specific amount of each loan; the purpose of each loan (construction or otherwise); whether the loan was taken out by both parties; which party or parties paid back the loan; and the source of the funds used to pay back the loan (marital or nonmarital). If the parties do not carry their burdens on sourcing, then the Family Court may so find. But the Family Court cannot combine and categorize large sums of money without sufficient evidence and factual findings.

All of that being said, we do appreciate the challenges that the Family Court encountered in this case. The proceedings were bitter, the issues were complex, and the trial provided more heat than light. The Family Court conducted itself with honor and tried to stay out of the fray while presiding over this intense battle with a gargantuan amount of exhibits, disjointed proof, and bickering arguments. But the Family Court is the arena, and it is vested with the duty to delve into the details and push the parties on their proof. As our Supreme Court has held: "[t]he judges presiding over family law matters must be mindful of the ramifications of their written orders. A bare-bone, conclusory order such as the one entered here, setting forth nothing but the final outcome, is inadequate and will

enjoy no presumption of validity on appeal." *Keifer v. Keifer*, 354 S.W.3d 123, 126 (Ky. 2011). Upon remand, the Family Court must rule precisely.

### C. Marital Misconduct

Husband also asserts that the Family Court erred by allowing evidence of marital misconduct at trial. Husband speculates that "evidence of marital misconduct could certainly explain the trial court's grossly miscalculating the largest asset at issue[,]" *i.e.*, the home. Reply Brief, p. 5. Yet the Family Court did not mention marital misconduct in its division of marital assets, and Husband did not cite any evidence of the Family Court's consideration of such evidence. But it was nonetheless inadmissible. KRS 403.190(1) requires marital property to be divided "without regard to marital misconduct . . . ." Because we are remanding this case for a new trial, we caution the Family Court to refrain from admitting prejudicial, character evidence that is irrelevant to the findings that the Family Court must make.

### D. Marital Debts

Husband argues that the Family Court erred in assigning two types of marital debts to him, the aforementioned home loans and certain credit card debts. As stated *supra*, the Family Court must make specific findings about the loans. The same analysis applies to the credit cards. Absent such findings, the award must be reversed as unsupported by the evidence.

Unlike property acquired during a marriage, KRS 403.190 "does not create a presumption as to marital debts and we do not believe one can be judicially implied. All debts incurred during marriage are not necessarily marital debts. Consideration should be given to the nature of the debts based upon the receipt of benefits and the extent of participation." *Bodie v. Bodie*, 590 S.W.2d 895, 896 (Ky. App. 1979); *see also Neidlinger v. Neidlinger*, 52 S.W.3d 513, 523 (Ky. 2001), *overruled on other grounds by Smith v. McGill*, 556 S.W.3d 552 (Ky. 2018) (discussing the bearing of the economic circumstances of the parties upon their respective abilities to assume indebtedness); *Inman v. Inman*, 578 S.W.2d 266, 270 (Ky. App. 1979). Courts are also required to make findings as to whether the debt was incurred to purchase marital property and/or to provide for maintenance and support of the family. *Neidlinger*, 52 S.W.3d at 523. Because specific factual determinations are required, "there is no presumption that debts must be divided equally or in the same proportion as the marital property." *Smith*, 235 S.W.3d at 15.

The Family Court's reasoning supporting its allocation of the marital debts is sparse:

> Any remaining debt owed on the home equity line of credit shall be paid by [Husband] and the debt shall be refinanced into his sole name within thirty (30) days from the date of this Order. Each party shall each [sic] be responsible for any credit cards or outstanding debt in their [sic] own name.

R. at 423.

The Family Court's exceptionally terse discussion of marital debts does not address any factors, such as who acquired the debts, who derived the benefit of them, and whether they were used for marital or nonmarital purposes. *Bodie*, 590 S.W.2d at 896. We reversed in similar circumstances in *Guffey v. Guffey*, 323 S.W.3d 369, 373 (Ky. App. 2010). And we must do so here.

First, the division of marital debts is one piece of the parties' overall financial status. In other words, a just division of marital debts may be dependent upon the amount of marital property a party receives. *See, e.g.,* Graham and Keller, 15 Ky. Prac. *Domestic Relations Law* § 15:89 (2024) ("On some occasions a court may want to consider the relationship between marital assets and marital debt in order to evaluate the net estate distributed to each party."). Since the parties' largest asset, the home, is being valued anew and potentially re-allocated or re-divided on remand, the Family Court must also re-evaluate the parties' marital debts.

Second, the Family Court did not explain its decision by addressing any of the required, pertinent factors. That Court is not required to list exhaustively the *Bodie* factors, but it must offer some explanation of its rationale. To do otherwise is an abuse of discretion, as the discretion appears untethered to the specific facts. *Neidlinger*, 52 S.W.3d at 523. For example, it would seem

unjust for a party to be ordered to pay marital debts which another party unilaterally incurred for nonmarital purposes. As we construe his briefs, Husband argues that is what occurred here regarding the credit card debts. On remand, the Family Court must explain which party acquired any marital debts, in what amount, when, and for what purpose (marital or nonmarital).

### E.  Maintenance

Husband argues that the Family Court erred in awarding Wife maintenance. Because one key component of any maintenance award is the recipient's inability to provide for her reasonable needs, maintenance awards are essentially dependent upon a just division of property. *Newman v. Newman*, 597 S.W.2d 137, 138 (Ky. 1980). Because we are reversing both the valuation of the marital home (which will impact the value of the property) and the conclusory adjudication of it as marital without requisite findings, as well as the division of marital debts (which also may impact the overall net value of the property), we also reverse and remand the award of maintenance. *Ensor v. Ensor*, 431 S.W.3d 462, 475-76 (Ky. App. 2013).

For the benefit of the parties and Family Court on remand, we will briefly address retroactive maintenance as that is a contested issue likely to recur. Because we are reversing and remanding the other orders of the Family Court, it will need to adjust the order of maintenance itself upon remand.

Wife sought maintenance in her petition for dissolution of marriage, but she did not file a contemporaneous motion for temporary maintenance. R. at 47. Under KRS 403.160(1), a motion for temporary maintenance must be accompanied by an affidavit "setting forth the factual basis for the motion and the amounts requested." Wife's petition alone was thus statutorily insufficient to support an award of even temporary maintenance.

For reasons not apparent from the face of the record, the Family Court did not hold a hearing on Wife's motion until late March 2022. Further, it did not issue a subsequent, written decision about temporary maintenance.[3] Instead, the Family Court seems to have first addressed Wife's request for maintenance years later in the March 2023 decree of dissolution of marriage.

In the March 2023 decree, the Family Court awarded Wife $1,000 per month in maintenance for five years, retroactive to November 1, 2019, the approximate date that she left the residence. The end result of this ruling was that Husband had an instant, almost $40,000 maintenance arrearage obligation, which the Family Court ordered him to pay in full within 90 days.

---

[3] Whether the Family Court made oral findings is unknown to us. Kentucky Rules of Appellate Procedure ("RAP") 24(A)(3) requires the video recordings of a trial to be made part of the appellate record and allows other "recordings of other proceedings that have been designated by the parties . . . [to] be certified as a part of the record on appeal." Though Husband designated video recordings of some other proceedings to be contained in the record on appeal, *see* R. at 897, he did not designate video of the March 2022 temporary maintenance hearing to be part of the appellate record. Thus, the video recording of that hearing is not before us.

-29-

Maintenance statutes generally contemplate prospective relief. *Pursley v. Pursley*, 144 S.W.3d 820, 828-29 (Ky. 2004). Retroactive relief is usually appropriate only when circumstances delay a case from being submitted for decision. *Mudd v. Mudd*, 903 S.W.2d 533, 534 (Ky. App. 1995). Nonetheless, the Family Court has the discretion to award maintenance retroactively to the date it was first sought. *Higbee v. Higbee*, 89 S.W.3d 409, 410 (Ky. 2002); *see also Weldon v. Weldon*, 957 S.W.2d 283, 286 (Ky. App. 1997).

But the Family Court here awarded maintenance to Wife retroactive to a date preceding her filing of the dissolution petition. There is no Kentucky authority permitting Family Courts to award maintenance *sua sponte* before it is sought. We agree with a Kentucky treatise's observation that "the trial court is granted considerable discretion in fixing the effective date of maintenance *so long as it does not precede the making of a request for maintenance* by some means." Richard A. Revell, Diana L. Skaggs, Michelle Eisenmenger Mapes, Procedure For Obtaining Maintenance, *Kentucky Divorce* § 13:5 (2023) (emphasis added).

This award of retroactive maintenance constitutes an abuse of discretion and is reversed and remanded. As maintenance awards are required to be based in part on marital property, upon remand, the Family Court must assess anew whether Wife should be awarded maintenance after resolving anew the sundry issues involving valuing the marital residence, allocating nonmarital

-30-

property, and equitably dividing marital property and debts. KRS 403.200 (requiring a determination of whether marital property provides for one's needs). The Family Court's forthcoming maintenance analysis must address the factors in KRS 403.200. No maintenance award shall be ordered to begin retroactively to a date before Wife sought such relief.

### F. Attorney Fees

Husband raises two issues regarding attorney fees. First, he argues the Family Court erred by denying his request to receive attorney fees from Wife as a discovery sanction. Second, Husband contends the Family Court erred by ordering him to pay $25,300 of Wife's attorney fees.

### 1. Husband's Request for Attorney Fees

Husband submitted requests for admission to Wife under Kentucky Rules of Civil Procedure ("CR") 36.01, including requests that asked her to admit that the Farm and a certificate of deposit ("CD") were each Husband's nonmarital property. Wife declined to concede the point.

The Family Court eventually held that the Farm was nonmarital, and that Wife never seriously disputed this fact. It further found that the CD was also nonmarital because Husband purchased it with funds obtained from selling his nonmarital property. However, the Family Court did not address Husband's claim for reimbursement of the funds he expended in trying to prove a point that was

ultimately not contested. Under CR 37.03, "[i]f a party fails to admit the . . . truth of any matter as requested under Rule 36, and if the party requesting the admissions thereafter proves the . . . truth of the matter," then the requesting party "may apply to the court for an order requiring the other party to pay him the reasonable expenses incurred in making that proof, including reasonable attorney's fees."[4] The intent of the rule is that parties to litigation should not consume time at trial or be put to the expense of proving evidence or ultimate facts that are not substantially contested. *Berrier v. Bizer*, 57 S.W.3d 271, 279-80 (Ky. 2001).

The Court concluded that Husband was not entitled to attorney fees due to Wife's denial that the Farm was entirely his nonmarital property because there was a genuine dispute on that matter. *See* CR 37.03(c) (permitting a court to deny attorney fees if "the party failing to admit had reasonable ground to believe that he might prevail on the matter . . . ."). We fail to see any genuine dispute on that issue in the record before us. The parties disputed the marital nature of the home, and not the nonmarital nature of the land. We are reversing and remanding the decision about the marital property for same reasons we have already discussed

_____

[4] Husband did not submit a separate motion seeking relief under CR 37.03. Instead, in his proposed findings of fact and conclusions of law, Husband sought to recover attorney fees from Wife due to her failure to admit the nonmarital nature of the Farm and the CD. In a case involving Husband's counsel, our Supreme Court discouraged seeking relief under CR 37.03 by embedding the request in proposed findings of fact and conclusions of law. *Rumpel v. Rumpel*, 438 S.W.3d 354, 360 n.2 (Ky. 2014). However, it did not prohibit the practice.

at length, and there remains an ongoing dispute about the marital property to be resolved by the Family Court. We must now reverse and remand the Family Court's decision to decline to award attorney fees as to the undisputed issue of the nonmarital nature of the land. The Family Court must determine the amount of the attorney fees dedicated solely to this narrow issue.

As to the CD, the Family Court never addressed Husband's request, as it must on remand. We cannot be the initial decisionmaker on Husband's request because "[a]s an appellate court, we review judgments; we do not make them." *Klein v. Flanery*, 439 S.W.3d 107, 122 (Ky. 2014). *Accord Calhoun v. CSX Transp., Inc.*, 331 S.W.3d 236, 245 (Ky. 2011) ("In this Commonwealth, it is axiomatic that appellate courts are not fact-finders . . . ."). We must remand this issue to the Family Court for consideration.

### 2. Award of Attorney Fees to Wife

Under KRS 403.220, "[t]he court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for attorney's fees . . . ." "Disparate resources, not need *per se*, is all that is required to invoke the statute . . . ." *Rumpel*, 438 S.W.3d at 363. If the Family Court finds "the parties' resources are disparate," the Court "enjoys a broad discretion under the statute to allocate costs and award fees . . . ." *Id.*

-33-

Here, after conducting an evidentiary hearing, the Family Court held that "there is no question that there is a financial disparity between the parties, with [Husband] having significantly more resources available to him than [Wife] has available to her." R. at 869. The Court found that Wife's attorney's fees totaled $41,300, of which she had already paid $16,000. The Court ordered Husband to pay the remaining balance, $25,300, directly to Wife's counsel, who is listed as the Appellee, Nicole M. Kersting, in No. 2023-CA-0808-MR.

Husband appeals that decision on procedural and substantive grounds. Procedurally, he contends the Family Court abused its discretion by denying his request to conduct additional discovery prior to the hearing and by denying his request to continue the hearing. Substantively, he contends the Family Court's "analysis was erroneously skewed . . . ." Appellant's Opening Brief, p. 32.

### a. Procedural Challenges to the Attorney Fee Award

CR 33.01(3) provides in relevant part that "[e]ach party may propound a maximum of thirty (30) interrogatories and thirty (30) requests for admission to each other party . . . ." It is uncontested that Husband had already propounded 30 interrogatories to Wife before the hearing on Wife's motion for attorney fees. Thus, Wife objected to Husband being permitted to propound additional interrogatories. The Family Court agreed with Wife.

We discern no error. Husband cites to nothing which required the Family Court to allow him additional interrogatories. Under these facts, with the voluminous record before it, Husband has not shown that the Family Court erred or abused its discretion by denying Husband's request to conduct further discovery.

We also reject Husband's argument that the Family Court denied him procedural due process. Husband was afforded notice of and the opportunity to be heard at the hearing on attorney fees. *Hampson v. Boone Cnty. Planning Comm'n*, 460 S.W.3d 912, 917 (Ky. App. 2014) ("Fundamentally, the hallmarks of procedural due process are notice and an opportunity to be heard."). Indeed, Husband testified at length on his own behalf, and his counsel extensively cross-examined Wife. Moreover, the parties had already submitted, and exhaustively discussed, a host of financial documents at trial.

We similarly discern no abuse of discretion in the denial of Husband's request for a continuance of the hearing. "With respect to the denial of a continuance, our standard of review is whether the court abused its discretion." *Guffey*, 323 S.W.3d at 371. Husband asserts a continuance was appropriate to let him conduct more discovery. But we have already rejected this claim. Wife filed the dissolution proceeding in December 2019; the attorney fee hearing was conducted in June 2023. We discern no abuse of discretion in the Family Court's

bottom line conclusion that all issues needed to be finally resolved without further delay.

### b. Substantive Challenges to the Attorney Fee Award

Husband also argues that the Family Court erred by not discussing the appropriate factors for determining whether to award attorney fees. We agree, but the main reason that we must reverse the attorney fee award has been discussed at length already. The Family Court needs to conduct a new trial as to property valuation, nonmarital allocation, marital division, debt allocation, and maintenance. Attorney fees must be part of the new equation.

The Family Court discussed, as it should have, the parties' financial situations and the disparity that it concluded existed between the financial resources of Husband and Wife. But it must also consider additional factors, such as the results secured by the attorney. *Rumpel*, 438 S.W.3d at 363. It must also engage in a meaningful substantive analysis of the other, required factors in its written decision. While the Family Court here cited authority outlining factors relevant to an award of attorney fees, it did not expound upon or render an analysis of their impact on the specifics of this case. *Id.*; *see also Boden v. Boden*, 268 S.W.2d 632 (Ky. 1954). Although a prong-by-prong analysis of the eight potentially relevant factors is unnecessary, merely listing them is insufficient. An

application of the law to the facts is essential. *Gentry v. Gentry*, 798 S.W.2d 928, 937 (Ky. 1990). This analysis must occur as part of the new trial.

We are mindful of Husband's argument that "[a] good part of [Wife's] attorney fees would not have been incurred but for the issues resulting from the family court committing numerous errors which [Husband] had to address in order to preserve his rights." Appellant's Opening Brief, p. 34. We have been required to reverse and remand the Family Court's decisions. Continued litigation of points that should already have been resolved is an issue. However, Husband will need to demonstrate to the Family Court that Wife's attorney fees were artificially inflated or incurred for unnecessary reasons. Wife had the right to defend the Family Court's conclusions to the same extent that Husband had the right to challenge them. Both parties are allowed to fight for themselves in the Family Court, and both achieved some success there.

And while only one prevails here at this time, the litigation is far from over. From our review of the record, this action has been bitterly fought each step of the way, and a new trial looms with more battles to be fought. Large attorney fees are the inevitable end result of protracted legal trench warfare. As our Supreme Court put it, "the financially superior party in a KRS Chapter 403 proceeding is free to play hard-ball [sic], but that party does so at the risk of being obliged to pay for the other side's designated hitter." *Rumpel*, 438 S.W.3d at 365.

-37-

The Family Court may conclude that neither Wife nor Husband may escape responsibility for the protracted, acrimonious nature of this case's progression and the resulting consequences (such as the length of litigation and the incurrence of significant attorney fees).

### III. Conclusion

For the foregoing reasons, we reverse and remand the orders and judgments below. Despite the laudable efforts of the Family Court in a difficult trial, the errors were significant, compounded each other, and pervaded all of the rulings, which were themselves too lacking in detail. The Family Court shall conduct a new trial, enter specific findings of fact and conclusions of law including a proper valuation of the marital home with expert testimony, allocation of nonmarital property, a determination of any marital property and distribution, division of marital debts, maintenance, and attorney fees.

ALL CONCUR.

BRIEFS FOR APPELLANT:

William Dennis Sims
Louisville, Kentucky

J. Gregory Troutman
Louisville, Kentucky

BRIEF FOR APPELLEE:

Allison Spencer Russell
Louisville, Kentucky